### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **Sandra Martin,** | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **Case No. 3:06cv492 (JBA)** |
| | : | |
| **William Willingham,** | : | |
| **Warden, Federal Correctional** | : | |
| **Institution – Camp Danbury, CT** | : | |

### RULING AND ORDER [DOCS. # 1, 3]

Petitioner Sandra Martin seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a writ of mandamus pursuant to 28 U.S.C. § 1361(1) declaring unlawful the February 2005 Federal Bureau of Prisons ("BOP") regulations, 28 C.F.R. §§ 570.20-570.21, which restrict the prerelease time inmates can serve in a Community Correction Center ("CCC") to the lesser of 10% of the inmate's time to be served or 6 months (the "10% rule"), and directing Respondent not to consider the 10% rule when selecting the appropriate portion of her sentence that she may serve in a CCC.  See Petition [Doc. # 1].  Petitioner argues that the regulations are an unlawful interpretation of 18 U.S.C. § 3621(b).[1]  For the reasons that follow, the petition will be GRANTED.

---

[1] Petitioner also argues that the regulations violate the Administrative Procedure Act, 5 U.S.C. § 551 et seq., because they are arbitrary and capricious, and that they are also impermissibly retroactive and thus violate the Ex Post Facto clause of the United States Constitution.  The Court finds it unnecessary to reach these issues, see infra n.6.

1

## I.   Background

On March 26, 2004, petitioner Sandra Martin entered a guilty plea before United States District Judge Peter C. Dorsey to a one-count information charging her with bank fraud in violation of 18 U.S.C. § 1344(1).  On March 29, 2004, Judge Dorsey sentenced Martin to 18 months' imprisonment, to be followed by three years' supervised release, and ordered her to pay restitution of $997,000 and a $100 assessment.  On May 27, 2005 Martin self-surrendered to the Federal Correctional Institution at Danbury, Connecticut and commenced service of her sentence, less a jail time credit of one day.  Martin's projected release date, based on accumulated good conduct, is September 6, 2006. Thus, respondent calculates Martin's 10% date – i.e., the date the BOP considers Martin to be eligible for transfer to CCC confinement – to be August 1, 2006.  By contrast, Martin contends that she should have been considered for CCC transfer six months before her release date, or March 6, 2006.

## II.  Discussion

### A.   Statutory and Regulatory Background

The authority granted to the BOP by Congress for facility designations and prerelease custody is found in two statutes. 18 U.S.C. § 3621(b) provides:

> **Place of imprisonment.** The Bureau of Prisons shall
> designate the place of the prisoner's imprisonment. The
> Bureau may designate any available penal or
> correctional facility that meets minimum standards of

health and habitability established by the Bureau,
whether maintained by the Federal Government or
otherwise and whether within or without the judicial
district in which the person was convicted, that the
Bureau determines to be appropriate and suitable,
considering--

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the
sentence--
(A) concerning the purposes for which the sentence to
imprisonment was determined to be warranted; or
(B) recommending a type of penal or correctional
facility as appropriate; and
(5) any pertinent policy statement issued by the
Sentencing Commission pursuant to section 994(a)(2) of
title 28.

18 U.S.C. § 3624(c) specifically addresses the prerelease

transfer of inmates to CCCs:

**Pre-release custody.**  The Bureau of Prisons shall, to
the extent practicable, assure that a prisoner serving
a term of imprisonment spends a reasonable part, not to
exceed six months, of the last 10 per centum of the
term to be served under conditions that will afford the
prisoner a reasonable opportunity to adjust to and
prepare for the prisoner's re-entry into the community.
The authority provided by this subsection may be used
to place a prisoner in home confinement. The United
States Probation System shall, to the extent
practicable, offer assistance to a prisoner during such
pre-release custody.

Prior to 2002, the BOP considered inmates for prerelease CCC

placement for up to 6 months prior to their scheduled release

date.  See BOP Program Statement 7310.04 (available at

http://www.BOP.gov) ¶¶ 5, 9.  In December 2002, after issuance of

a memorandum by the Justice Department's Office of Legal Counsel

concluding that the BOP's CCC transfer practice violated §

3624(c), the BOP adopted a policy providing that transfers to CCCs would be limited to the last 10% of an inmate's sentence, not to exceed 6 months.  The 2002 policy was challenged in numerous habeas corpus petitions, two circuit courts invalidated the policy as impermissibly restricting the discretion accorded the BOP by § 3621(b), see Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004), and, as the Second Circuit noted, "'the vast majority' of courts to consider the matter . . . 'held that the [2002] policy was unlawful,'" see United States v. Arthur, 367 F.3d 119, 121 (2d Cir. 2004) (citing Cato v. Menifee, 03civ5795 (DC), 2003 WL 22725524, at *4 (S.D.N.Y. Nov. 20, 2003) (collecting cases)), including this Court, see United States v. Mestel, 03cr276 (JBA), 2004 WL 2472273 (D. Conn. Nov. 2, 2004).

The BOP regulations in dispute in this case became effective on February 14, 2005 and state:

> **What is the purpose of this subpart?**
> (a)  This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
> (b)  As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

28 C.F.R. § 570.20.

4

**When will the Bureau designate inmates to community confinement?**

(a)   The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b)   We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

28 C.F.R. § 570.21

Petitioner challenges the application of these regulations to her as contrary to the statutory authority granted to the BOP, and requests that this Court order the respondent to consider, in good faith, her transfer to a CCC prior to her 10% date, in accordance with the factors set out in 18 U.S.C. § 3621(b) and pre-2002 BOP practice.[2]

The February 2005 regulations have been the subject of much

---

[2]   The Government contends that petitioner may not proceed under 28 U.S.C. § 2241 because she is challenging the conditions, i.e. the place, of her confinement, rather than the fact or duration of her sentence. However, the Second Circuit has held that § 2241 is the appropriate vehicle for an inmate to challenge the "execution" of his or her sentence, "including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001) (internal citation omitted). The Third Circuit in Woodall rejected the same argument raised by respondent here, determining that "what is at issue here is the 'execution' of [petitioner's] sentence." 432 F.3d at 241-42.

litigation in this Circuit and elsewhere, with divided results.
All courts in this District known to have considered the issue
have declared the regulations invalid.  <u>See</u> <u>Evans v. Willingham</u>,
413 F. Supp. 2d 155 (D. Conn. 2006) (Underhill, J.); <u>Baker v.</u>
<u>Willingham</u>, 04cv1923, 2005 WL 2276040 (D. Conn. Sept. 19, 2005)
(Dorsey, J.); <u>Gindlesperger v. Willingham</u>, 05cv1752 [Doc. # 27]
(D. Conn. Jan. 24, 2006) (Hall, J.).  District courts in New York
appear divided.  <u>See</u>, <u>e.g.</u> <u>Pimentel v. Gonzalez</u>, 367 F. Supp. 2d
365 (E.D.N.Y. 2005) (for petitioner); <u>Drew v. Menifee</u>, 04civ9944
(HBP), 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005) (for petitioner);
<u>Lowy v. Apker</u>, 05cv10336 (LBS), 2006 WL 305760 (S.D.N.Y. Feb. 9,
2006) (for respondent); <u>Yip v. Fed. Bureau of Prisons</u>, 363 F.
Supp. 2d 548 (E.D.N.Y. 2005) (for respondent).[3]  The Third and
Eighth Circuits recently concluded that the policy was unlawful
as abrogating the mandatory consideration of the statutory
factors delineated in § 3621(b).  <u>See</u> <u>Fults v. Sanders</u>, 442 F.3d
1088 (8th Cir. 2006); <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F.3d
235 (3d Cir. 2005).[4]  For the reasons that follow, the Court

---

[3] All of the cases cited by respondent in which relief from
the February 2005 10% rule was denied (some of the cases cited
concern the 2002 policy), <u>see</u> Resp. Opp. [Doc. # 6] at 11, were
cases in which the petitioner appeared <u>pro se</u>, and therefore
those courts may not have had fully developed legal positions
advocated before them when they ruled.

[4] The Second Circuit heard argument on this issue in August
2005, but has not issued its opinion.  <u>See</u> <u>Levine v. Apker</u>,
05cv3472 (CLB, 2005 WL 1417134 (S.D.N.Y. May 20, 2005), appeal
docketed, No. 05-2590-pr (2d Cir. May 27, 2005).

agrees with the results reached by those courts that have invalidated the February 2005 policy as inconsistent with the statutory mandate in 18 U.S.C. § 3621(b).

B.   Analysis

Review of an agency's interpretation of its governing statute is typically entitled to deference pursuant to Chevron v. Nat'l Resources Defense Council, Inc., 467 U.S. 837 (1984).  As respondent acknowledged at oral argument, the Chevron analysis and the Court's interpretation of § 3621(b) go hand in hand, because the first inquiry under Chevron is "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 842.  Only "if the Court determines Congress has not directly addressed the precise question at issue, [i.e.,] if the statute is silent or ambiguous with respect to the specific issue," will the Court reach "the question [of] whether the agency's answer is based on a permissible construction of the statute."  Id. at 842-43.

Thus, proceeding with the first inquiry, the Court concludes that the intent of § 3621(b) is clear, and requires the BOP to consider the factors articulated therein.  The word "may" in the statute refers to the BOP's authority to decide designations of inmates to particular facilities, but as to the factors, the

7

statute is clear that this BOP designation takes place only after "considering" all of the factors provided.  See Woodall, 432 F.3d at 245 (also noting that "the use of the word 'and' before the final factor in the five-part list indicates that Congress intended for the BOP to weigh all the factors listed") (emphasis in original); Fults, 442 F.3d at 1091 (the statute "lays out criteria that must be considered by the BOP in making placement determinations) (emphasis added); Evans, 413 F. Supp. 2d at 159-60 (concluding that the factors are mandatory).  As Woodall notes, this reading of the plain language of § 3621(b) is buttressed by the legislative history, which provides that the BOP "is 'specifically required' to consider the § 3621 factors – including any statement by the court that imposed the sentence – before it can properly place or transfer an inmate."  432 F.3d at 245-46 (citing S. Rep. No. 98-225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3324-25).

By their terms, the February 2005 regulations constitute a "categorical exercise of discretion," providing that inmates will not be transferred to a CCC until the later of 10% of time served or 6 months prior to his or her release date, which respondent explained at oral argument reflects the BOP's view that inmates serving longer sentences require longer prerelease programming. By definition a "categorical" approach does not encompass consideration of individualized inmate circumstances.

Respondent relies on <u>Lopez v. Davis</u>, 531 U.S. 230 (2001), as supporting the BOP's categorical exercise of its statutory discretion in the challenged regulations.  In <u>Lopez</u>, the Supreme Court considered a BOP regulation "categorically den[ying] early release to prisoners whose current offense is a felony attended by 'the carrying, possession, or use of a firearm,'" 531 U.S. at 232-33 (citing 28 C.F.R. § 550.58(a)(1)(vi)(B)), which was promulgated pursuant to 18 U.S.C. § 3621(e)(2)(B) providing "that the Bureau of Prisons may reduce by up to one year the prison term of an inmate convicted of a nonviolent felony, if the prisoner successfully completes a substance abuse program," <u>id</u>. The Supreme Court found the BOP's regulation to be a permissible interpretation of 18 U.S.C. § 3621(e)(2)(B) because it served the purpose of categorically defining a class of "violent felons" who were thus ineligible for early release pursuant to the statute, a statutory concept which lacked operative specificity.

This case is thus distinguishable from <u>Lopez</u> because here, rather than interpreting an undefined concept in the authorizing statute, the BOP's regulation categorically excludes factors which this Court reads the statute as requiring to be considered, by providing that inmates will only be released to CCCs within the last 10% of their sentence, regardless of an individual inmate's personal history and characteristics and the circumstances of his or her crime of conviction or the individual

sentencing purpose.  In other words, while on its face § 3621(b)
requires the BOP to consider the factors set out, the BOP's 10%
rule categorically provides that the BOP will not do so.[5]  Thus,
the regulation fails to give effect to the clear intent of the
statute.[6]

    <u>C.   Remedy</u>

    This Court having concluded that the 10% rule, 28 C.F.R. §§

---

[5]  Respondent's argument that the BOP "carefully
consider[ed] all of the statutorily-specified factors in its
rulemaking," <u>see</u> Resp. Opp. at 20, misconceives the
individualized nature of some of the statutory factors, which by
definition cannot be addressed by a "one size fits all" approach.
<u>See</u> <u>also</u>, <u>e.g.</u>, <u>Fults</u>, 442 F.3d at 1092 ("Three of the five
factors relate to an inmate's individual circumstances.
Accordingly, it would not have been possible for the BOP to
consider all of the factors when it promulgated the
regulations."); <u>Woodall</u>, 432 F.3d at 248 ("[W]hile the commentary
accompanying the proposed and final rules specifically discussed
some of the § 3621 factors . . . at no point does the BOP take
into account the requirement that it consider the particular
circumstances of individual inmates.  By definition, particular
circumstances cannot be considered in promulgating a blanket
rule."); <u>Evans</u>, 413 F. Supp. 2d at 160 ("The BOP [necessarily]
cannot consider those factors – as section 3621(b) requires it to
do – with a categorical rule prohibiting the BOP from considering
an inmate for CCC placement based on the length of her remaining
sentence."); <u>Pimentel</u>, 367 F. Supp. 2d at 375 ("[U]nlike the rule
in <u>Lopez</u>, the February 2005 Rule in no way furthers or interprets
these factors.  Instead, it disregards them.").

[6] Because the Court finds the February 2005 10% rule invalid
as inconsistent with the statutory directives, 18 U.S.C. §
3621(b), it need not address petitioner's argument that the rule
is retroactive as applied to her and thus violates the Ex Post
Facto clause of the United States Constitution.  <u>See</u> <u>Ashwander v.
Tenn. Valley Auth.</u>, 297 U.S. 288, 347 (1936) ("The Court will not
pass upon a constitutional question . . . if there is also
present some other ground upon which the case may be disposed
of.").  Additionally, it need not reach petitioner's APA argument
for claimed flaws in the BOP's rulemaking process.

570.20-570.21, is an invalid exercise of BOP statutory discretion, petitioner's habeas petition is granted to the extent respondent must consider petitioner for transfer to a CCC without regard to the 10% rule and in accordance with § 3621(b) and the BOP's pre-2002 practices.  Because time is of the essence, given that Martin's 6-month date has already passed, the Court directs respondent to complete the process in good faith within no more than two weeks.

**III. Conclusion**

For the foregoing reasons, Martin's petition [Doc. # 1] is GRANTED and the Court directs respondent to consider Martin's request for transfer and reach its decision as described above by May 19, 2006.  The Court DENIES as moot petitioner's Motion for Preliminary Injunction [Doc. # 3].  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 5th day of May, 2006.**

11